**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

**CIVIL CASE NO. 1:04cv96**
**[CRIMINAL CASE NO. 1:00cr13]**

| | | |
|---|---|---|
| **LAMAR SHAW,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Petitioner's motion

pursuant to 28 U.S.C. §2255 to which response has been filed by the

Government.  For the reasons stated herein, the motion is denied.


**PROCEDURAL HISTORY**

On February 10, 2000, the Petitioner was indicted in a one count bill

of indictment with conspiring to possess with intent to distribute cocaine.

**Bill of Indictment, filed February 10, 2000.**  The indictment named one

1

co-defendant and three unindicted co-conspirators.  **Id.**  An information filed the same date alleged that the conspiracy was involved with more than 15 kilograms of cocaine.  **Information pursuant to Title 21 U.S.C. §841(b), filed February 10, 2000.**  The Petitioner retained Lawrence Crane as his attorney and did not request court-appointed counsel. **Motion for Admission *Pro Hac Vice*, filed March 14, 2000.**

The Petitioner proceeded to trial in May 2000, during which his co-defendant and two of the unindicted co-conspirators testified against him. On May 19, 2000, he was found guilty by jury verdict of the sole count of the indictment.  **Verdict Sheet, filed May 19, 2000.**

On August 23, 2000, Jay Strongwater filed a notice of appearance as newly retained counsel in this case.  **Notice of Appearance, filed August 23, 2000.**  Five months later, Mr. Strongwater sought leave to withdraw due to financial disagreements with the Petitioner.  **Motion for Leave to Withdraw, filed January 30, 2001.**  The undersigned denied his motion, noting that the Petitioner's trial counsel had been discharged and allowing Strongwater to withdraw would leave the Petitioner without counsel for his sentencing hearing.  **Order, filed January 31, 2001.**  Thereafter, the Petitioner retained Jack Stewart to represent him at sentencing.

On June 22, 2001, the undersigned sentenced the Petitioner to 188 months incarceration. **Judgment in a Criminal Case, filed June 22, 2001.** The Petitioner appealed the judgment of conviction and sentence, represented on appeal by Noell Tin, the same attorney who has brought this motion. **Notice of Appeal, filed June 14, 2001.** The Fourth Circuit affirmed the Petitioner's conviction and sentence on February 25, 2003.[1] *United States v. Shaw*, **2003 WL 463501 (4th Cir. 2003).** The Petitioner did not petition for a writ of *certiorari* to the Supreme Court and thus, his conviction and sentence became final on May 26, 2003. *Clay v. United States*, **537 U.S. 522 (2003).** As a result, this motion filed on May 24, 2004 was timely.

## ALLEGATIONS OF THE MOTION

In support of the motion, the Petitioner raises only the issue of

───────────────────

[1]The grounds raised on appeal were: (1) the testimony of Drug Enforcement Agent (DEA) Bishop was unduly prejudicial because the agent expressed his opinion that the Petitioner was the head of the drug organization and the major supplier in Asheville of cocaine; and (2) the agent's testimony that co-defendant White had decided to tell the truth was improper bolstering. The Circuit rejected both arguments, noting the use of a curative instruction and the substantial weight of the other evidence against the Petitioner.

ineffective assistance of his trial counsel, Lawrence Crane. The grounds asserted are:

1.  Before trial, the Petitioner asked Crane about the possibility of a plea bargain with the Government. **Affidavit of Lamar Shaw, attached as Exhibit 3 to Motion to Vacate Sentence, filed May 24, 2004.** Crane allegedly told the Petitioner that the Assistant United States Attorney (AUSA) had not offered much in the way of a plea agreement. *Id.* Crane allegedly told the Petitioner that he (Crane) "was a fighter and going to trial is what [I] do[] best." *Id.*

2.  Several days before his trial, the Petitioner again asked Crane about the possibility of a plea. *Id.* Crane allegedly told the Petitioner that the AUSA would not be interested in a plea and he had no choice but to go to trial. *Id.*

3.  Crane allegedly did not provide the Petitioner with a copy of the proposed plea agreement sent to Crane by the AUSA. *Id.* The first time the Petitioner saw a copy of the agreement was after his conviction when he requested a copy of his file from Crane. *Id.* The Court notes, however, that the Petitioner has not included a copy of the proposed plea agreement as an exhibit to this motion.

4.     During the second meeting with Crane, Crane allegedly told Shaw
       that the Government did not have much evidence against him, the
       AUSA was not ready for trial and Crane intended to ask for an
       acquittal.  **Affidavit of Terrika Shaw, attached as Exhibit 5 to**
       **Motion,** *supra***.**

5.     In the motion, the Petitioner's attorney argues that Crane failed to
       adequately advise the Petitioner of the maximum penalties he faced
       if convicted by jury verdict.


## THE GOVERNMENT'S RESPONSE

The Government has provided a sworn affidavit from Crane in which
he makes the following responses:

1.     During Crane's first interview with the Petitioner, the Petitioner
       vehemently denied any involvement with drugs or the conspiracy
       charged in the indictment.  **Crane Affidavit, attached to Response**
       **to Motion to Vacate Sentence under 28 U.S.C. §2255, filed July**
       **13, 2004, at ¶5(a)(1).**  Crane averred that the Petitioner never
       changed his position on this issue.  *Id***.**

2.     During consultations with the Petitioner, some of which were not

attended by family members, Crane did, in fact, advise the Petitioner of the penalties which he faced. *Id.***, at ¶5(a)(2).** However, the Petitioner continued to deny any involvement with the conspiracy. *Id.* Crane also discussed cooperation with the Government but the Petitioner stated that he could not offer any assistance to the Government due to his lack of involvement. *Id.*

3. On March 31, 2000, the Petitioner, accompanied by family members, went with Crane for a polygraph test in order to determine whether he would pass such a test if it were administered by the Government. *Id.***, at ¶5(a)(3).** It was the opinion of the examiner that the Petitioner was being deceitful when answering questions concerning his involvement in the conspiracy. *Id.* Crane confronted both the Petitioner and his family with the results of the test and advised the Petitioner that he should consider entering into a plea agreement with the Government. *Id.* The Petitioner refused, continuing to maintain his innocence. *Id.*

4. Consistent with his declarations to Crane, the Petitioner testified at trial that he had not been involved in the drug conspiracy. *Id.***, at ¶5(a)(4).**

5.  The Petitioner was well aware that trial was imminent because he assisted in preparing a witness list, in finding those witnesses and providing documents to counsel for use during trial. ***Id.*, at ¶5(b).**

6.  Crane did not advise the Petitioner that the prosecution had little evidence against him. ***Id.*, at ¶5(c).**

7.  Crane did not at any time tell the Petitioner it was too late for a guilty plea. ***Id.*** The fact was that the Petitioner was not interested in a guilty plea. ***Id.***

The Government also provided a sworn affidavit from Deputy Sheriff Alfred Bottego in which it was averred:

1.  In August 2000, after the Petitioner had already been convicted by jury verdict, DEA Agent Bishop asked Bottego to interview the Petitioner because he had indicated a willingness to talk to investigators about drug trafficking. **Affidavit of Alfred Bottego, attached to Additional Response to Motion to Vacate Sentence under 28 U.S.C. §2255, filed August 6, 2004.** Bottego did so; however, the Petitioner "was evasive about giving exact information[.]" ***Id.*** The information which the Petitioner did have was out of date because he had been living in Georgia. ***Id.*** Bottego

terminated the interview because there was no information which was useful to the authorities.  *Id.*

The Government also provided a report from DEA Agent Higgins stemming from a de-briefing of the Petitioner on February 24, 2000. **Report of Investigation, attached to Additional Response,** *supra*.  After his arrest on that date, the Petitioner did attempt to act as a middle-man for the DEA agents to set up a controlled buy of cocaine.  *Id.*  The Petitioner denied that he himself sold any cocaine, admitting only that he put people in contact with each other.  *Id.*


## THE RECORD BEFORE THE COURT

The transcripts of the trial and sentencing hearing have been filed in the record of these proceedings.  By the time of sentencing, the Petitioner was represented by Jack Stewart who advised variously during the sentencing hearing as follows:

> [T]he evidence at trial was my client, while he was involved in the distribution of drugs at some level, *although he certainly doesn't admit to that* ...
>
> ...
>
> In all candor to the Court, I'm at a bit of a disadvantage because I obviously wasn't there for the trial of the offense.  But the point *reported by the Defendant* in this objection is quite simply this, that

the individuals who testified and the individuals who were involved in this conspiracy that you've heard from, whether it was Eric Pendlin (sic) or Ms. White, are persons *that Lamar Shaw dealt with not from a buyer to seller type relationship, but sort of as co-buyers in this conspiratorial scheme*.

...

I know that [Lamar] went to trial *adamantly maintaining his innocence and that is something that he has not given up to this day*.

**Transcript of Sentencing Proceedings, filed May 20, 2002, at 6, 21, 26**

**(emphasis provided).**

These comments by counsel accurately reflect the Petitioner's position during his trial. The Petitioner testified variously as follows:

Q. Have you ever been involved in the narcotic business at all?
A. No, I have not.

...

I'm not going to say that [Eric Penland] wasn't moving [cocaine]. I've heard that he was selling drugs and I've heard that he did sell drugs, but I've never seen him selling drugs and he never brought that around me.

**Trial Transcript, dated May 19, 2000, at 90, 109.**

This testimony was reiterated throughout his direct examination during which the Petitioner denied having ever dealt drugs with each of the witnesses who testified for the prosecution. He also testified that when he was arrested, the officers gave him an opportunity "to help himself" by arranging a drug buy. ***Id.*, at 93-94.** Although he testified that he did not

know anyone who sold cocaine, he tried calling someone from a carwash. *Id.* That individual, however, never returned his call. *Id.*, **at 95.** At trial and sentencing, the Petitioner continued to represent himself as someone who only put people in touch with each other.

## STANDARD OF REVIEW

The Supreme Court has stated the test for determining whether a defendant received adequate assistance of counsel.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

***Strickland v. Washington***, **466 U.S. 668, 686 (1984).**

Unless a defendant makes both showings, his claim of ineffective assistance of counsel must fail. *Id.* Thus, a defendant must show counsel's performance fell below objective standards of reasonableness, and, that but for his conduct, there was a reasonable probability the result of his case would have been different. *Id.*, **at 688.**

**DISCUSSION**

The Court will first address the issue of whether an evidentiary hearing is required in this matter. An evidentiary hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve the issue. *United States v. Witherspoon*, **231 F.3d 923, 925-27 (4th Cir. 2000).** Thus, summary dismissal of a §2255 motion would not be warranted where there is opposing sworn testimony, even if one side's story is "hard to believe." *Gray v. Spillman*, **925 F.2d 90, 95 (4th Cir. 1991).** And, "where the ultimate resolution rests on a credibility determination, an evidentiary hearing is especially warranted." *United States v. White*, **366 F.3d 291, 302 (4th Cir. 2004).**

Against this backdrop, however, it is noted that Rule 2 of the Rules Governing Section 2255 Proceedings requires that a motion pursuant to that section "be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant." **Rule 2(b)(5), Rules Governing Section 2255 Proceedings.** The motion and memorandum of law in this matter were signed by the attorney for the Petitioner; however, he did not sign under penalty of perjury. That is not surprising; however,

the Petitioner also did not sign the motion under penalty of perjury.  Nor did

he provide an affidavit or declaration in which, under penalty of perjury, he

swore to the allegations contained in the motion and memorandum of law.

Thus, for this reason alone, the motion may be summarily dismissed.

***United States v. LaBonte*, 70 F.3d 1396, 1413  (1st Cir. 1995), *overruled**

***on other grounds* 520 U.S. 751 (1997); *Barrett v. United States*, 965**

**F.2d 1184, 1195 (1st Cir. 1992); *Dominguez v. United States*, 2005 WL**

**1949606 (S.D.Tex. 2005) (Petitioner did not sign the motion under oath**

**and did not provide an affidavit swearing that the allegations of the**

**motion were true.  Thus, the motion could be summarily dismissed.).**


In addition to this omission, the Court finds that the "affidavits"

attached to the Petitioner's motion do not, in fact, qualify as affidavits.

Exhibit 3 attached to the motion is entitled the Petitioner's affidavit.

However, the language of the affidavit does not include a statement that

the Petitioner either swore or declared under penalty of perjury as to the

truth of the contents of the document.  "By definition, an affidavit is a sworn

document, declared to be true under the penalties of perjury."  **11 Moore's**

**Federal Practice, §56.14[1][b] (Matthew Bender 3d ed.); 28 U.S.C.**

**§1746 (Statute which permits an unsworn declaration to substitute for a conventional affidavit if the statement contained therein is made under penalty of perjury and verified as true and correct.); *Cruz v. United States*, 117 F.3d 1420 (6th Cir. 1997), citing *Williams v. Browman*, 981 F.2d 901 (6th Cir. 1992).** Underneath the Petitioner's signature is a stamp from a notary which contains the language "sworn to and subscribed before me;" however, the language of the actual affidavit does not contain any such language. **Exhibit 3, *supra.*** "A document's qualification as an affidavit is not determined by the presence or absence of 'the stamp or seal of a notary.'" ***Tackman v. Goord*, 2005 WL 2347111 **26 (W.D.N.Y. 2005), quoting *DeMars v. O'Flynn*, 287 F.Supp.2d 230, 242 (W.D.N.Y. 2003), quoting 11 Moore's Federal Practice, §56.14[1][b] (Matthew Bender 3d ed.); accord, *LeBouef, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2nd Cir. 1999).** And, while the notary's stamp states that it was sworn to, the affidavit itself and the notary's stamp do not indicate whether the Petitioner swore under penalty of perjury or that the contents of the affidavit are true. ***Tackman, supra*, at **27.** "Merely notarizing the signature does not transform a [statement] into an affidavit; nor do[es] the [statement] conform to the requirements of

28 U.S.C. §1746." ***DeMars*, 287 F.Supp.2d at 242, quoting *Flowers v.* *Abex Corp*., 580 F.Supp. 1230, 1233 n.2 (N.D.Ill. 1984).** A "notary public cannot convert an otherwise unacceptable [statement] into an affidavit merely by using the word 'sworn' and affixing a notary's stamp." ***Id*., at 243, n.8.** Thus, the Petitioner has not subjected himself to the penalties of perjury should it be determined that the statements contained in his "affidavit" are false. ***Tackman, supra.*** As a result, while the Court will consider the contents of the document, it does not qualify as an affidavit or unsworn declaration pursuant to 28 U.S.C. §1746.

Exhibits 4 and 5, the "affidavits" of Gwendolyn Shaw and Tarrika Shaw, are also entitled affidavits; however, neither has been sworn to under penalty of perjury.[2] Underneath the signature of each affiant appears the handwriting of J. Neal Jackson who wrote merely that the affiant had appeared before him. **Exhibits 4 and 5, attached to Motion, *supra*.** It is beyond dispute that neither of these two documents qualifies as an affidavit. **See, *e.g., United States v. St. Germain*, 76 F.3d 376 (4ᵗʰ Cir. 1996); *United States v. Austin*, 2005 WL 3546910 \*\*3 (W.D.Tenn.**

---

[2]The relationship of these individuals to the Petitioner is not provided although the motion refers to family members who accompanied the Petitioner to meetings with his attorney.

**2005) (A document entitled affidavit but not sworn to under penalty of**
**perjury is not an affidavit).**  Nor does the notary's handwritten statement

that the affiant appeared before him convert these documents into

affidavits sworn to or declarations made under penalty of perjury.  *St.*

*Germain, supra.* **(Notary noted that the affiant did not take an oath**

**when signing the document; therefore, it was unsworn.);** *DeMars,*

*supra.*

        Despite the presentment of these documents in support of the

motion, not one of the individuals providing the statements swore to the

contents of the affidavit under penalty of perjury.  A motion pursuant to

§2255 must be supported by such declarations or affidavits.  *United*

*States v. Aiello***, 814 F.2d 109, 113 (2^nd^ Cir. 1987) (The §2255 motion**

**must be supported by a "sufficient" affidavit.);** *Dominguez, supra.*

**(The motion must be accompanied by an affidavit in which the**

**movant swears that the allegations of the motion are true.).**  As a

result, the motion could be summarily dismissed for these reasons alone.

However, in an abundance of caution, the Court will consider these

documents, according them the weight due unsworn declarations not made

under penalty of perjury.

In reviewing the Petitioner's claims and the Government's response, the undersigned does not undertake a summary review. Even non-frivolous motions may be disposed of without an evidentiary hearing in proper cases. **White, 366 F.3d at 300.** And, a motion pursuant to §2255 may be dismissed if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." **28 U.S.C. §2255.** "[T]he district court is entitled to consider all the circumstances in the record in determining whether a hearing should be afforded." ***Gallo-Vasquez v. United States*, 402 F.3d 793, 797 (7ᵗʰ Cir. 2005).** For the reasons stated *infra*, the Court determines that a hearing in this case is not required.

To reiterate, "[i]n order to prevail in this court on his Sixth Amendment claim, [Petitioner] must show that his attorney rendered substandard assistance and that [Petitioner] was prejudiced as a result." ***Paters v. United States*, 159 F.3d 1043, 1045 (7ᵗʰ Cir. 1998), *adopted in United States v. Brannon*, 48 Fed.Appx. 51, 53 (4ᵗʰ Cir. 2002).** That is, the Petitioner must show that but for counsel's conduct, the result of his case would have been different. ***Brannon, supra*.** In the context of this case, in which the Petitioner claims that his attorney failed to advise him of

16

the Government's offer of a plea bargain, the Petitioner must show that "but for counsel's inadequate performance, [he] would have accepted the government's offer." ***Gallo*, 402 F.3d at 798.** Thus, the undersigned must consider whether the Petitioner has established "(1) through objective evidence that (2) there is a reasonable probability that he would have accepted the alleged proposed plea agreement absent defense counsel's advice." ***Paters*, 159 F.3d at 1046.**

The Petitioner states in his "affidavit" that on two occasions he discussed the possibility of a plea bargain with his attorney. **Exhibit 3, attached to Motion, *supra*.** Crane, according to the Petitioner, said that the prosecutor did not offer "much of a plea" and led him to believe that Crane had "his mind made up to pursue trial." ***Id.*** On the second occasion, a few days before the trial began, Crane told the Petitioner that the prosecutor was not interested in a plea and he had to go to trial. ***Id.*** And, the Petitioner claims that he never even saw a copy of the plea agreement until after his conviction. ***Id.***

The other two documents submitted in support of the motion contain allegations that during meetings with Crane, the possibility of a plea bargain was discussed but the prosecutor was "not offering much of a

deal." **Exhibits 4 and 5, attached to Motion, *supra*.** When the issue was

raised immediately prior to trial, the Petitioner and his family were told that

the prosecutor would not be interested in a plea at that point. *Id.*

> Such evidence is certainly not overwhelming. And it does not prove
> the ultimate question – that there is a reasonable probability that
> [Petitioner] would have *accepted* the plea deal but for his attorney's
> advice. Instead, it only shows that the alleged advice was in fact
> offered.

*Paters*, 159 F.3d at 1047.

The fact that the Government did not offer "much of a deal" to a one count

bill of indictment charging conspiracy is not surprising, especially in view of

the fact that the Petitioner's co-defendant pled guilty. Nor would it be

unusual for the Government to take the offer "off the table" a few days prior

to a trial for which it had already prepared. Nonetheless, the allegations

contained in these documents establish the opposite of the Petitioner's

contention; that is, that  Crane did advise the Petitioner that there was a

plea offer.

In the motion and memorandum, Petitioner's attorney alleges that

Crane never advised the Petitioner of the penalties which he faced or of

the terms of the plea agreement.[3]  He does, however, note that the plea agreement contained a provision pursuant to which the Petitioner could have been rewarded for substantial assistance.  Counsel also argues that Crane never advised or recommended cooperation.  And, he argues the plea agreement would have resulted in a sentence of 108 months imprisonment instead of 188 months.

It is first noted that in his "affidavit," the Petitioner does not allege that he would have accepted the plea agreement had he been made aware of it.   Indeed, as previously noted, the plea agreement has not been placed in the record; thus, whether it would have offered a reduced sentence is not shown.  ***Gallo*, 402 F.3d at 798.**  Moreover, the Petitioner does not state that Crane failed to explain cooperation to him or to advise that he should cooperate.  This argument is made by counsel.

In contrast to the unsworn statements of the Petitioner and his family members, Crane has sworn (1) the Petitioner was not interested in cooperation because he claimed to be innocent; (2) the Petitioner never changed his stance that he was innocent; (3) he advised the Petitioner of

---

[3]Although not dispositive, the Court does note that it is the custom in this Court for defendants to be advised of the nature of the charges against them and the penalties faced at their arraignment hearings.

the penalties faced and the terms of the plea agreement; (4) he explained cooperation to the Petitioner; (5) the Petitioner failed a polygraph examination; (6) the Petitioner testified during his trial that he had not been involved in the conspiracy; and (7) the Petitioner consistently reiterated that he did not want to plead guilty.

The allegations of this sworn affidavit directly conflict with the statements filed by the Petitioner. The Court will therefore look to the record of the proceedings, noting that the undersigned presided over the trial and sentencing of this matter.

On the day that the Petitioner was arrested, he attempted to cooperate with the authorities by trying to set up a controlled buy of cocaine. During this attempt, the Petitioner asserted his innocence to the agents, claiming that all he did was act as a middle-man to put people in touch with each other. The Petitioner testified about this incident during his trial, stating that the officers gave him an opportunity "to help himself" by arranging a drug buy. Although he testified that he did not know anyone who sold cocaine, he tried calling someone from a carwash; but, that individual never returned his call. The Petitioner's testimony during the trial is virtually identical to the agent's report: while maintaining his innocence,

the Petitioner nonetheless was savy enough to attempt to "help himself" by arranging a controlled purchase of cocaine.  It is thus clear that the Petitioner knew what cooperation was, what it could do for him in the long run and with whom such cooperation was necessary.

Moreover, after his trial, the Petitioner "indicated a willingness to talk to investigators about drug trafficking."  **Bottego Affidavit,** *supra*. Investigators traveled to the detention facility where the Petitioner was being held; however, they found that the Petitioner "was evasive about giving exact information[.]" *Id.*  And, the information he did have was out of date and not useful. *Id.*

Again, it is obvious that the Petitioner was well versed in the concept of cooperation.  However, as the prosecutor reiterated during the sentencing hearing, the information which the Petitioner had was not useful to the authorities.

Moreover, the Petitioner's trial testimony shows that he did, in fact, insist that he was innocent.  He testified that he had never been in the drug business.  At his sentencing hearing, his new attorney told the Court that the Petitioner still did not admit any involvement with the conspiracy and noted that the Petitioner "went to trial adamantly maintaining his innocence

and that is something that he has not given up to this day." **Sentencing Transcript,** *supra***, at 26.** These comments from an objective attorney who did not represent the Petitioner at trial attest to the Petitioner's stubborn or blind refusal to acknowledge the law of conspiracy pursuant to which his conduct in "putting people together" would be sufficient to show his membership in a drug conspiracy.

Moreover, the witnesses who testified against the Petitioner at trial, almost all of whom he knew, provided overwhelming evidence of his guilt. Yet, the Petitioner claimed that his co-defendant actually apologized to him for her testimony against him. The Court finds from the record that the Petitioner consistently proclaimed his innocence and doggedly refused to accept that his conduct was conspiratorial. The record also shows that he knew what cooperation was, understood how it worked, knew what it could mean for him, tried to cooperate and yet had nothing which the Government wanted. "The record shows ... that petitioner was not advised to reject a plea agreement." *Gallo***, 402 F.3d at 798.** First, the Petitioner repeatedly asserted his innocence to the authorities, at trial and even at his sentencing hearing. *Id***.** Second, the Petitioner has failed to establish that he was never made aware of a plea agreement offered by the

22

Government.  *Id.* **("[T]he motion must be accompanied by a detailed and specific affidavit.").**  In fact, the Petitioner admitted that he knew an offer had been made.  Even without considering the allegations of Crane's affidavit, the Petitioner's contention that he was unaware of a plea agreement are belied by his sophistication when it came to cooperation. Nor did he ever complain to the Court about this issue before, during or after trial.  And, at his sentencing, this issue was not raised; indeed, he continued to press his innocence.

> Even if [Petitioner] could show that he was offered a bargain and [not advised about it], the record reflects that he would not have been prejudiced by the [lack of] advice.  In this context, prejudice means "a reasonable probability that, but for counsel's inadequate performance, [petitioner] would have accepted the government's offer."  The record shows exactly the opposite: that [Petitioner] rejected advice that he plead guilty. ... [P]etitioner went to trial, took the stand, and steadfastly professed his innocence.  This record does not leave room for a reasonable probability that, but for counsel's advice, [Petitioner] would have accepted a plea agreement.

*Id.*, **at 798-99;** *accord, United States v. Humphress*, **398 F.3d 855, 859 (6th Cir. 2005) (A defendant's continued assertion of innocence supports the conclusion that he would not have entered into a plea agreement.);** *United States v. Cabrera-Rosario*, **118 Fed.Appx. 182 (9th Cir. 2004);** *Jackson v. United States*, **101 Fed.Appx. 583 (6th Cir. 2004).**

Even without considering the allegations of Crane's affidavit, the

Court finds that the Petitioner has failed to establish by objective evidence that he would have accepted the plea bargain offered by the Government. The undersigned has "sufficient information, based on its observations, the record, and the law to determine that [Petitioner] had received effective assistance of counsel." ***Rodriguez v. United States*, 286 F.3d 972, 986-87 (7th Cir. 2002).** This is especially true since the undersigned presided over the trial and sentencing of this matter and observed the Petitioner during his trial testimony. ***Id*.; *United States v. Arguellas*, 78 Fed.Sppx. 984 (5th Cir. 2003).** The Court finds that the Petitioner's claims are conclusively refuted by the record and files of the case. ***Id*.; *Owens v. United States*, 236 F.Supp.2d 122, 143-44 (D.Mass. 2002).** Thus, the Court cannot find that Crane rendered ineffective assistance of counsel.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Petitioner's motion pursuant

to 28 U.S.C. §2255 is hereby **DISMISSED**.


Signed: April 17, 2006


Lacy H. Thornburg
United States District Judge